# EXHIBIT G

**TESLA, INC. EMPLOYEE NON-DISCLOSURE AND INVENTIONS ASSIGNMENT AGREEMENT**

In consideration of my employment or continued employment by **TESLA, INC.** (collectively with its divisions, subsidiaries and affiliates, the **"*Company*"**) and the compensation now and hereafter paid to me, I agree as follows:

1.    <u>PROPRIETARY INFORMATION.</u> During and after my employment, I will hold in strictest confidence Proprietary Information (defined below). I will not disclose, use, or publish any Proprietary Information, except as such disclosure, use, or publication may be required in connection with my work for the Company, or unless an officer of the Company expressly authorizes such in writing.

   1.1    **Protection of Proprietary Information.** Except as set forth under Section 1.2, **"*Proprietary Information*"** means all information, in any form and format, to which I have access by virtue of and in the course of my employment by the Company. By way of example, and without limitation, Proprietary Information includes non-public technical data, trade secrets, know-how, research and development, strategies, product launches, intellectual property, information about products or services, markets, features, technology, concepts, ideas, plans, designs, formulas, methods, processes, discoveries, improvements, source and object codes, data, programs, lists of or information relating to suppliers or customers, non-public financial information, Inventions, engineering, hardware configuration, marketing, and other business information of the Company that I have access to either directly or indirectly, in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Company property. I acknowledge that the Proprietary Information has been created, acquired and/or compiled by the Company at great effort and expense and must be protected from disclosure for legitimate and substantial business reasons.

   1.2    **Exclusions to Proprietary Information.** Notwithstanding the foregoing, Proprietary Information excludes any information that is or lawfully becomes known to the general public without breach of any confidentiality obligations. I also understand that nothing in this Agreement or definition of Proprietary Information is intended to limit any disclosure or discussion of employment-related information accessible to employees, such as employment terms/conditions, including wages, benefits, and other terms of employment, as protected by applicable law, which are not restricted from disclosure by this Agreement or any Company policy.

   1.3    **DTSA Notice.** Tesla's Code of Business Ethics provided to you outlines the Company's reporting policy for a suspected violation of law.

   1.4    **Legal and Equitable Rights.** This Agreement supplements, and does not supersede, any rights the Company may have in law or equity with respect to the protection of trade secrets or confidential or proprietary information.

2.    <u>ASSIGNMENT OF INVENTIONS.</u>

   2.1    **Proprietary Rights. "*Proprietary Rights*"** means all intellectual property rights throughout the world, including trade secret, patent, copyright, economic right of exploitation, mask work, and other, and including any registrations of or applications to register such rights.

   2.2    **Moral Rights. "*Moral Rights*"** means any rights to claim authorship of or credit on any Company Inventions (defined below), to object to or prevent the modification or destruction of any Company Inventions, or to withdraw from circulation or control the publication or distribution of any Company Inventions, and any similar right, existing under judicial or statutory law of any country or subdivision thereof in the world, or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right."

   2.3    **Inventions. "*Invention*"** means any idea, concept, discovery, invention, development, research, technology, work of authorship, trade secret, software, firmware, content, audiovisual material, tool, process, technique, know-how, data, plan, device, apparatus, specification, design, prototype, circuit, layout, mask work, algorithm, program, code, documentation, or other material or information, tangible or intangible, whether or not it may be patented, copyrighted, trademarked, or otherwise protected (including all versions, modifications, enhancements, improvements, and derivative works thereof).

   2.4    **Prior Inventions.** I have set forth on <u>**Exhibit A**</u> to this Agreement **(Disclosure of Prior Inventions)** a complete list of all inventions that I have, alone or jointly with others, conceived, developed, or reduced to practice before the commencement of my employment with the Company, that I consider to be my property or the property of third parties and that I wish to have excluded from the scope of this Agreement (collectively, **"*Prior Inventions*"**). If no such disclosure is attached, I represent that there are no Prior Inventions. If, in the course of my employment with the Company, I incorporate a Prior Invention into a Company product, process, or machine, the Company is hereby granted a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license (with rights to sublicense through multiple tiers of sublicensees) to make, have made, modify, use, copy, distribute, import, disclose sell, and offer for sale, such Prior Invention. Notwithstanding the foregoing, I agree that I will not incorporate, or permit to be incorporated, Prior Inventions in any Company Inventions without the Company's prior written consent.

   2.5    <u>**California Employees Only**</u> - <u>**Labor Code Section 2870 Notice.**</u> I have been notified and understand that the provisions of Section 2.6 of this Agreement do not apply to any Company Invention (defined below) that qualifies fully as a non-assignable invention under the provisions of Section 2870 of the California Labor Code, which states:

Case 5:25-cv-04963-SVK    Document 1-7    Filed 06/11/25    Page 3 of 6

*(a)  ANY PROVISION IN AN EMPLOYMENT AGREEMENT WHICH PROVIDES THAT AN EMPLOYEE SHALL ASSIGN, OR OFFER TO ASSIGN, ANY OF HIS OR HER RIGHTS IN AN INVENTION TO HIS OR HER EMPLOYER SHALL NOT APPLY TO AN INVENTION THAT THE EMPLOYEE DEVELOPED ENTIRELY ON HIS OR HER OWN TIME WITHOUT USING THE EMPLOYER'S EQUIPMENT, SUPPLIES, FACILITIES, OR TRADE SECRET INFORMATION EXCEPT FOR THOSE INVENTIONS THAT EITHER:*

> *(1)  RELATE AT THE TIME OF CONCEPTION OR REDUCTION TO PRACTICE OF THE INVENTION TO THE EMPLOYER'S BUSINESS, OR ACTUAL OR DEMONSTRABLY ANTICIPATED RESEARCH OR DEVELOPMENT OF THE EMPLOYER; OR*

> *(2)  RESULT FROM ANY WORK PERFORMED BY THE EMPLOYEE FOR THE EMPLOYER.*

*(b)  TO THE EXTENT A PROVISION IN AN EMPLOYMENT AGREEMENT PURPORTS TO REQUIRE AN EMPLOYEE TO ASSIGN AN INVENTION OTHERWISE EXCLUDED FROM BEING REQUIRED TO BE ASSIGNED UNDER CALIFORNIA LABOR CODE SECTION 2870(a), THE PROVISION IS AGAINST THE PUBLIC POLICY OF THIS STATE AND IS UNENFORCEABLE.*

I agree to promptly advise the Company in writing of each Invention that I believe fully qualifies under California Labor Code Section 2870 promptly upon the creation of such Invention.

2.6  **Works for Hire; Assignment of Inventions.** I acknowledge and agree that all original works of authorship which are made by me (solely or jointly with others) within the scope of my employment and which are protectable by copyright are "works made for hire" under the U.S. Copyright Act and that the Company will be considered the author and owner of such works. To the extent any such works of authorship are not deemed works made for hire, I hereby irrevocably assign to the Company all of my right, title, and interest (including all Proprietary Rights) in and to such works of authorship. I hereby assign, to the Company all my right, title, and interest in and to any and all Inventions that (i) are developed using equipment, supplies, facilities, trade secrets, or Proprietary Information of the Company, (ii) result from work performed by me for the Company, or (iii) relate at the time of conception or reduction to practice of the invention to the Company's business, or actual or demonstrably anticipated research and development of the Company (the **"*Company Inventions*"**). I hereby irrevocably transfer and assign, to the Company all Proprietary Rights and Moral Rights in or with respect to any Company Inventions. I forever waive and agree never to assert any and all Moral Rights I may have in or with respect to any Company Inventions, even after termination of my work on behalf of the Company.

2.7  **Notice to Third Parties.** During and after the term of my employment, the Company may, with or without prior notice to me, notify third parties of my agreements and obligations under this Agreement.

2.8  **Assistance.** I agree to assist in every proper way and to execute those documents and to perform such actions as are reasonably requested by the Company to obtain, sustain, and from time to time enforce patents, copyrights, and other rights and protections relating to Company Inventions in the United States or any other country. I hereby irrevocably designate and appoint the Secretary of the Company as my attorney-in-fact, which appointment is coupled with an interest, to act for and in my behalf to execute, verify, and file any such documents and to do all other lawfully permitted acts to further the purposes of this paragraph with the same legal force and effect as if executed by me. My obligations under this paragraph will continue beyond the termination of my employment with the Company for any reason, provided that the Company will compensate me at a reasonable rate after such termination for time or expenses actually spent by me at the Company's request on such assistance.

**3.   RECORDS.** I agree to keep and maintain adequate and current written records of all Inventions made by me during the period of my employment at the Company, which records shall be available to and remain the sole property of the Company at all times. I will promptly disclose all such Inventions in writing to the Company and will supplement any such disclosures to the extent the Company may request. If I have any doubt as to whether or not to disclose an Invention to the Company, I will disclose it.

**4.   RETURN OF COMPANY RECORDS.** Upon the termination of my employment for any reason, or at such earlier time as the Company may request, I shall immediately return to the Company all originals and copies of all hard copy and electronic documents, files and other property of the Company in my possession or control or to which I may have access, including all records referred to in Section 3 above, regardless of the storage medium (e.g., internal or external hard drives, solid-state drives, USB flash drives, flash memory cards, and cloud storage).

**5.   NO CONFLICTING OBLIGATIONS.** I represent that my performance of this Agreement and as an employee of the Company does not and will not breach any agreement to keep in confidence information acquired by me in confidence or in trust before my employment by the Company. Without limiting the foregoing, I agree that during my employment by the Company I will not improperly use or disclose any confidential information or trade secrets of any former employer or any other person to whom I have an obligation of confidentiality; I will not bring onto the premises of the Company any unpublished documents or any property belonging to any former employer or any other person to whom I have an obligation of confidentiality unless consented to in writing by that former employer or person; and I will use in the performance of my duties only information which is generally known and used by persons with training and experience comparable to my own, is common knowledge in the industry or otherwise in the public domain, or is otherwise provided or developed by the Company. I have not entered into and will not enter into any agreement or understanding, either written or oral, in conflict herewith.

**6.    NOTICES.** Any notices required or permitted hereunder shall be given to the appropriate party at the address specified below or at such other address as the party shall specify in writing. Such notice shall be deemed given upon personal delivery to the appropriate address or, if sent by certified or registered mail, three (3) days after the date of mailing.

**7.    EMPLOYMENT.** I understand and agree that nothing in this Agreement shall confer any right with respect to continuation of employment (which at all times shall be "at-will" unless I have entered into an explicit written agreement with the Company stating otherwise), nor shall it interfere in any way with my right or the Company's right to terminate my employment at any time, with or without cause.

**8.    GENERAL PROVISIONS.**

8.1    This Agreement will be governed by and construed according to the laws of the county and state in which I am primarily assigned to work in by Company. I understand and acknowledge that any disputes between myself and the Company may be subject to binding arbitration pursuant to any separate arbitration agreement I may enter into with the Company. To the extent that any lawsuit is permitted in court, then I hereby agree to submit to the jurisdiction of, and the exclusive jurisdiction over and venue in the state and federal courts located in the county and state in which I was last primarily assigned to work in by Company.

8.2    If any provision of this Agreement is found to be excessively broad as to duration, geographical scope, activity or subject, such provision shall be construed or reformed by limiting and reducing it to the extent required to render it enforceable under applicable law. If any provision of this Agreement is found to be invalid, illegal or unenforceable and cannot be construed so as to render it enforceable, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

8.3    Nothing in this Agreement is intended to restrict, or shall be interpreted as restricting, my right to (i) engage in activity protected by Section 7 of the National Labor Relations Act; (ii) discuss or disclose information about unlawful acts in the workplace, such as harassment, discrimination, or other conduct that I have reason to believe is unlawful; or (iii) initiate communications directly with, file any charge or complaint with, cooperate with, provide relevant information, or otherwise assist in an investigation by (A) the SEC, or any other governmental, regulatory, or legislative body regarding a possible violation of any federal law; or (B) the Equal Employment Opportunity Commission ("*EEOC*"), Department of Labor ("*DOL*"), National Labor Relations Board ("*NLRB*"), or any other governmental authority with responsibility for the administration of fair employment practices laws regarding a possible violation of such laws, or as compelled or requested by lawful process. Moreover, without limiting the foregoing, neither this Agreement nor the confidentiality provisions contained in any other existing employment related document between me and the Company shall be construed to prohibit or otherwise restrict me, as an employee of Company from lawfully reporting waste, fraud, or abuse to a designated investigative or law enforcement representative of a federal department or agency authorized to receive such information under any procurement contract.

8.4    The Company and I acknowledge that, to the extent I have been engaged to provide services for the Company before the date of this Agreement (the "*Prior Engagement Period*"), whether as an employee, independent contractor, consultant, advisor, or otherwise, and if during the Prior Engagement Period: (i) I received access to any information from or on behalf of Company that would have been "Proprietary Information" if I received access to such information during the period of my employment with the Company under this Agreement; or (ii) I conceived, created, authored, invented, developed or reduced to practice any item, including any intellectual property rights with respect thereto, that would have been an "Invention" if conceived, created, authored, invented, developed or reduced to practice during the period of my employment with Company under this Agreement, then any such information shall be deemed "Proprietary Information" hereunder and any such item shall be deemed an "Invention" hereunder, respectively, and this Agreement shall apply to such information or item as if conceived, created, authored, invented, developed or reduced to practice under this Agreement.

8.5    The provisions of this Agreement shall survive the termination of my employment and the assignment of this Agreement by the Company to any successor in interest or other assignee. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns. The Company may assign any of its rights or obligations under this Agreement.

8.6    No waiver by the Company of any breach of this Agreement shall be a waiver of any preceding or succeeding breach. No waiver by the Company of any right under this Agreement shall be construed as a waiver of any other right.

8.7    This Agreement is the final, complete and exclusive agreement of the parties with respect to the subject matter hereof and supersedes and merges all prior or contemporaneous discussions or agreements between us regarding such subject matter. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing and signed by the party to be charged.

8.8    Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement. This Agreement shall be effective as of the first day of my employment with the Company.

UNDERSTOOD, AGREED TO, AND ACCEPTED WITH THE INTENTION TO BE LEGALLY BOUND:

**Dated**: _____01-03-2024_____

      Jay Li

_____
(Signature)

      Jay Li

_____
(Printed Name)

**Exhibit A**
**Disclosure of Prior Inventions**

**TO:**        Tesla, Inc.

**FROM:**      _____

**DATE:**      _____

**SUBJECT:**   Disclosure of Prior Inventions

**1.    Except as listed in Section 2 below,** the following is a complete list of all inventions or improvements that have been made or conceived or first reduced to practice by me alone or jointly with others before my engagement by the Company:

_____

_____

_____

_____

☐      Additional sheets attached.

**2.**    Due to a prior confidentiality agreement, I cannot complete the disclosure under Section 1 above with respect to inventions or improvements generally listed below, the proprietary rights and duty of confidentiality with respect to which I owe to the following party(ies):

| Invention or Improvement | Party(ies) | Relationship |
|---|---|---|
| 1. _____ | _____ | _____ |
| 2. _____ | _____ | _____ |
| 3. _____ | _____ | _____ |

☐      Additional sheets attached.

**\*\*\* WARNING -** If you sign (or eSign) this document and do **not** fill in anything in sections 1 or 2 on Exhibit A, we assume that you do not have any applicable inventions.