1  JAIDEEP VENKATESAN, SBN 211386
   jvenkatesan@be-law.com
2  CAROLINE McINTYRE, SBN 159005
   cmcintyre@be-law.com
3  PETER SOSKIN, SBN 280347
   psoskin@be-law.com
4  BERGESON LLP
   111 N. Market Street, Suite 600
5  San Jose, California 95113
   Telephone: (408) 291-6200
6  Facsimile: (408) 297-6000

7  Attorneys for Defendants
   PROCEPTION, INC. and
8  ZHONGJIE "JAY" LI

9

10                 UNITED STATES DISTRICT COURT

11      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

12

13  TESLA, INC., a Texas Corporation,        Case No. 5:25-cv-04963-SVK

14          Plaintiff,                        **DEFENDANTS PROCEPTION, INC. AND
                                              ZHONGJIE "JAY" LI'S OPPOSITION TO
15       v.                                   PLAINTIFF'S MOTION FOR
                                              EXPEDITED DISCOVERY**
16  PROCEPTION, INC., a Delaware
    Corporation, and ZHONGJIE "JAY" LI, an
17  individual,
                                              Judge:   The Honorable Susan van Keulen
18          Defendants.                       Date:    July 3, 2025
                                              Time:    9:30 a.m.
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ...........................................................................................1

II.    TESLA'S FAULTY PREMISE AND LACK OF BASIS FOR ITS CLAIMS
       PRECLUDE EXPEDITED DISCOVERY ....................................................3

       A.    Tesla Misrepresents Li's Access of Documents on His Last Day of Work ..............3

       B.    Mr. Liang Mischaracterizes Li's SharePoint Use .........................................5

       C.    Tesla's Declarants Do Not Support Tesla's Position that Li Had No
             Legitimate Business Need to Access Documents ...........................................5

       D.    Tesla Sought to Prevent This Court from Evaluating Exculpatory Evidence
             After Filing This Action ........................................................................7

III.   TESLA'S DELAY PRECLUDES EXPEDITED DISCOVERY.........................9

       A.    Tesla Decides to Investigate Li Six Months After He Leaves Tesla.......................10

       B.    Tesla Delays Seeking Relief, Creating Its Own Emergency.................................11

IV.    TESLA IS NOT ENTITLED TO EXPEDITED DISCOVERY BECAUSE IT HAS
       NOT SATISFIED CAL. CODE CIV. PROC. § 2019.210 ..................................14

V.     TESLA'S DISCOVERY IS OVERBROAD AND DOES NOT MEET THE
       STANDARD FOR EXPEDITED DISCOVERY ............................................17

       A.    Tesla's Proposed Discovery Requests Are Overbroad And Burdensome ..............18

             1.    Document Requests .......................................................................19

             2.    Interrogatories .............................................................................22

             3.    Depositions ..................................................................................23

       B.    Tesla's Requests Are Not Proportional to the Needs of the Case ........................24

       C.    Tesla's Other Bases for Expedited Discovery Are Unavailing..............................24

VI.    CONCLUSION ...........................................................................................25

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Advanced Modular Sputtering, Inc. v. Superior Court*,
5
    132 Cal.App.4th 826 (2005)................................................................................ 15

6

*Advante International Corporation v. Mintel Earning Technology*,
    No. C05-01022-JW (RS), 2006 U.S. Dist. LEXIS 45859 (N.D. Cal. June 29.
7
    2006)....................................................................................................................... 19

8

*Albert's Organics, Inc. v. Holzman*,
    No. 19-cv-07477-PJH, 2020 U.S. Dist. LEXIS 135492 (N.D. Cal. July 30,
9
    2020) ..................................................................................................................... 15

10

*Alphonso Inc. v. Tremor Video, Inc.*,
11
    22-cv-03629-NC, 2022 U.S. Dist. LEXIS 233195 (N.D. Cal. Oct. 31, 2022)....................... 17

12

*Alta Devices, Inc. v. LG Elecs., Inc.*,
    No.18-cv-00404-LHK, 2019 U.S. Dist. LEXIS 5048 (N.D. Cal. Jan. 10, 2019)................... 15
13

14

*Am. LegalNet, Inc. v. Davis*,
    673 F. Supp. 2d 1063 (C.D. Cal. 2009)...................................................... 3, 17, 20

15

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*,
16
    28 Cal. App. 5th 923 (2018)........................................................................ 21, 22

17

*Apple Inc. v. Samsung Elecs. Co.*,
    768 F. Supp. 2d 1040 (N.D. Cal. 2011) ............................................................... 3
18

19

*Apple Inc. v. Samsung Elecs. Co.*,
    No. 11-CV-01846-LHK 2011, U.S. Dist. LEXIS 53233 (N.D. Cal. May 18,
20
    2011)..................................................................................................................... 18

21

*Beluca Ventures LLC v. Einride Aktiebolag*,
    660 F. Supp. 3d 898 (N.D. Cal. 2023) ............................................................... 15

22

*Brescia v. Angelin*,
23
    172 Cal. App. 4th 133 (2009).......................................................................16, 17

24

*Brown v. TGS Mgmt. Co.*,
    57 Cal. App. 5th 303 (2020)........................................................................21, 22
25

26

*Carl Zeiss X-Ray Microscopy Inc., v. Sigray, Inc.*,
    No. 21-cv-01129-EJD (VKD), 2021 U.S. Dist. LEXIS 216806 (N.D. Cal. Nov.
27
    9, 2021)................................................................................................................. 17

28

ii

*Cleanfish, LLC v. Sims*,
    NO. 19-CV-03663, 2019 U.S. Dist. Lexis 108946 (N.D. CA June 28, 2019) ...................... 10

*Comet Techs. USA Inc. v. Beuerman*,
    No. 18-CV-01441-LHK, 2018 U.S. Dist. LEXIS 224356 (N.D. Cal. Mar. 15,
    2018).................................................................................................................................... 12

*Commure, Inc. v. Canopy Works, Inc.*,
    No. 24-cv-02592-NW, 2025 U.S. Dist. LEXIS 75048 (ND. Cal. April 18, 2025) ............... 14

*Dowell v. Biosense Webster, Inc.*,
    179 Cal. App. 4th 564 (2009)........................................................................................ 21, 22

*Engelbrecht v. Experian Info. Servs., Inc.*,
    No. 5:12-CV-01547, 2012 U.S. Dist. LEXIS 205545 (C.D. Cal. Nov. 16, 2012).................. 18

*Floyd v. 24 Hour Fitness USA, LLC*,
    No. 23-CV-00871-EMC, 2024 U.S. Dist. LEXIS 29721 (N.D. Cal. Feb. 21,
    2024).................................................................................................................................... 25

*Gigacloud Tech., Inc. v. Linon Home Décor Prods.*,
    No. CV 24-4308-CBM-AGRx, 2024 U.S. Dist. LEXIS 207786 (C.D. Cal. Sep.
    8, 2024)................................................................................................................................ 12

*Henry Schein, Inc. v. Cook*,
    191 F. Supp. 3d 1072 (N.D. Cal. 2016) .......................................................................... 19, 20

*Hopscotch Adoptions, Inc. v. Kachadurian*,
    NO. CV F 09-2101 LJO, 2009 U.S. Dist. LEXIS 121763 (E.D. Cal. December
    7, 2009)........................................................................................................................... 10, 25

*Inteliclear, LLC v. ETC Global Holdings, Inc.*,
    978 F.3d 653 (9th Cir. 2020)............................................................................................... 14

*Kayvan v. Pompeo*,
    Case No. 5:19-CV-080710EJD, 2020 U.S. Dist. LEXIS 22040 (N.D. Cal. Feb.
    4, 2020)................................................................................................................................ 18

*Loop AI Labs Inc. v. Gatti*,
    195 F. Supp. 3d 1107 (N.D. Cal. 2016) ............................................................................... 17

*Loop AI Labs, Inc. v. Gatti*,
    No. 15-cv-00798-HSG, 2015 U.S. Dist. LEXIS 170349 (N.D. Cal. December
    21, 2015)......................................................................................................................... 14, 15

*Lydo Enters., Inc. v. Las Vegas*,
    745 F.2d 1211 (9th Cir. 1984)............................................................................................. 12

*Monterey Bay Military Hous., LLC v. Ambac Assur. Corp.*,
    No. 17-cv-04992, 2017 U.S. Dist. LEXIS 238978 (N.D. Cal. September 22,
    2017) ............................................................................................................. 25

*Norsat Int'l v. B.I.P. Corp.*,
    No. 12cv674-WQH-NLS, 2013 U.S. Dist. LEXIS 144149 (S.D. Cal. Oct. 3,
    2013) ............................................................................................................. 12

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*,
    762 F.2d 1374 (9th Cir. 1985) ............................................................... 12, 13

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
    328 F.R.D. 543 (N.D. Cal. 2018) .................................................................. 25

*Profil Institut Fur Stoffwechselforschung Gbmh v. Profil Inst. For Clinical
    Research*,
    No. 16cv2762-LAB (BLM), 2016 U.S. Dist. LEXIS 175238 (S.D. Cal. Dec. 16,
    2016)............................................................................................................. 24

*Rovio Ent. Ltd. v. Royal Plush Toys, Inc.*,
    907 F. Supp. 2d 1086 (N.D. Cal. 2012) ................................................... 3, 25

*Solarpark Korea Co., Ltd. v. Solaria Corp.*,
    No. 23-cv-01181-AMO, 2023 U.S. Dist. LEXIS 134650 (N.D. Cal. Aug. 2,
    2023)............................................................................................................. 14

*Sylabs, Inc. v. Rose*,
    No. 23-cv-00849-SVK, 2025 U.S. Dist. LEXIS 87588 (N.D. Cal. May 7, 2025) ................. 14

*Total Access Payments, Inc. v. Maximum Bus. Innovations, Inc.*,
    CV 10-5475-GHK(RCx), 2010 U.S. Dist. LEXIS 153036 (C.D. Cal. August 3,
    2010).............................................................................................................. 9

*Way.com, Inc. v. Singh*,
    No. 3:18-cv-04819-WHO, 2018 U.S. Dist. LEXIS 215243 (N.D. Cal. Dec. 2,
    2018)............................................................................................................. 12

*Weride Corp. v. Huang*,
    379 F. Supp. 3d 834 (N.D. Cal. 2019) .................................................. 12, 14

**Statutes**

15 USC § 261 ......................................................................................................... 4

Cal. Code Civ. P. § 2019.210 ................................................... 2, 14, 15, 16, 17, 25

**Other Authorities**

Fed. R. Civ. P. 16(b) ........................................................................................... 20

DEFENDANTS PROCEPTION, INC. AND JAY LI'S OPPOSITION TO PLAINTIFF'S MOTION FOR
EXPEDITED DISCOVERY, Case No. 5:25-cv-04963-SVK

Fed. R. Civ. P. 26(b)(1) ................................................................................................. 24

Fed. R. Civ. P. 26(d) ....................................................................................................... 3

Fed. R. Civ. P. 26 ......................................................................................................... 25

Fed. R. Civ. P. 26(f) ................................................................................................. 3, 10

# I.    INTRODUCTION

In several filings with this Court, Tesla publicly and prejudicially misrepresents the evidence *it contends* supports the premise of its trade secret misappropriation claims—that Defendant Zhongjie "Jay" Li ("Li") took Tesla's trade secrets by accessing or downloading documents he purportedly did not have a "demonstrated need" to access, and even accessed Tesla documents on his personal mobile phone on his last day at Tesla *after* business hours and after returning his Tesla computer. (*See* Dkt. 1 ¶ 33.j; Dkt. 14-33 ¶ 6; Dkt. 32-1 at 2:19–20). Based on these allegations, Tesla asks for extraordinary expedited discovery and preliminary injunctive relief against Li and the company he founded, Proception, Inc. ("Proception"). Tesla's evidence, however *does not* show this at all. Rather, its evidence shows that Li *did not access* Tesla documents with his phone after returning his computer *or* after business hours. As explained below, Tesla misreads the logs upon which it relies on to claim after-hours activity. Tesla's declarant, Jeff Liang, admits that the logs attached to his declaration are in Coordinated Universal Time (UTC)—seven hours *ahead* of Pacific Daylight Time (PDT). Incredibly, Tesla has repeatedly misrepresented the timing of Li's access to assert that he accessed files by mobile phone the evening of his last day, when in reality the latest access was in the afternoon PDT on his Tesla computer—while he was wrapping up at work and assisting colleagues.

Tesla has breathlessly repeated this misrepresentation using emotionally charged language like "stolen" and "theft" in publicly-filed pleadings that elicited press coverage and attempt to make Li's conduct look suspicious enough to entitle Tesla to expedited discovery and a preliminary injunction. But it is not the only problem with Tesla's proffered evidence. Its submissions include further misstatements of data logs, and its declarants lack personal knowledge of the documents it claims Li misappropriated. Tesla also mischaracterizes its declarants' statements to suggest Li improperly accessed Tesla documents when supporting the development of Tesla's Optimus robot project by collaborating with his colleagues—which Tesla knew before filing its Complaint. The documents Tesla provides, including one it filed but withdrew, show Li collaborating with employees on Optimus, per Tesla's public professions of its work culture.

1      Tesla now improperly asks this Court to endorse a fishing expedition as cover for its

2  decision to move forward with this case despite lacking a legitimate basis to file its Complaint in

3  the first place. Tesla's Motion for Expedited Discovery (the "Motion") is a transparent attempt to

4  secure extraordinary and unwarranted discovery through overbroad, intrusive, and unjustified

5  demands. Its Motion is fundamentally flawed on multiple grounds:

6        • Expedited discovery is not allowed for any allegation—the moving party must first set

7           forth sufficient evidence for its claims. Tesla misrepresented the timing of Li's access,

8           and its evidence does not support a claim of improper downloads, but just as easily

9           points to system activity on the devices.

10       • Tesla's protracted delay in seeking judicial intervention—despite knowing of the

11          alleged conduct for months—eviscerates any claim of urgency or irreparable harm.

12       • Tesla has failed to comply with the well-established requirement under California Civil

13          Procedure Code section 2019.210 to identify its alleged trade secrets with reasonable

14          particularity. Instead, Tesla relies on vague, amorphous categories and references to

15          entire documents, depriving Defendants and the Court of any meaningful ability to

16          ascertain the boundaries of the alleged trade secrets or frame the scope of discovery.

17       • Tesla's sweeping discovery—demanding forensic inspection of all of Defendants'

18          devices and accounts, broad written discovery, and multiple depositions on an

19          accelerated timeline—are grossly disproportionate, untethered to Tesla's preliminary

20          injunction request, and unsupported by evidence of wrongdoing or risk of spoliation.

21      Tesla's demand for extraordinary discovery is in stark contrast to its refusal to provide

22  even the most basic information to Defendants and the Court—the documents it contends Li

23  misappropriated. This underscores the improper, harassing nature of its demands. The Motion is

24  nothing more than an attempt to leverage the discovery process to gain unfettered access to

25  Defendants' proprietary information and burden an emerging startup, rather than to address any

26  legitimate, imminent threat to Tesla's interests. Tesla's Motion should be denied in its entirety.

27

28

DEFENDANTS PROCEPTION, INC. AND JAY LI'S OPPOSITION TO PLAINTIFF'S MOTION FOR
EXPEDITED DISCOVERY, Case No. 5:25-cv-04963-SVK

**II.    TESLA'S FAULTY PREMISE AND LACK OF BASIS FOR ITS CLAIMS PRECLUDE EXPEDITED DISCOVERY**

A party may not obtain discovery before a Rule 26(f) conference except upon good cause. Fed. R. Civ. P. 26(d). The moving party must show that "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Rovio Ent. Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1099 (N.D. Cal. 2012). Courts determine whether good cause exists by considering: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made."" *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009); *Apple Inc. v. Samsung Elecs. Co.*, 768 F. Supp. 2d 1040, 1044 (N.D. Cal. 2011). Although a motion for preliminary injunction is pending, "expedited discovery is not automatically granted merely because a party seeks a preliminary injunction." *Am. LegalNet*, 673 F. Supp. 2d at 1066. Moreover, a party must provide evidence from which reasonable inferences can justify expedited discovery. *Id.*, at 1071. (denying expedited discovery because while moving party ALN's declarant said customers declined to purchase ALN services "there is no evidence, and no reasonable inference can be drawn, that these customers are instead purchasing from defendants software allegedly misappropriated from ALN.").

Here, Tesla offers a misrepresentation of Li's conduct and misleadingly incomplete declarations to paint Li's conduct as so suspicious that it merits expedited discovery and a preliminary injunction. Rather, its request for expedited discovery is nothing more than a wish for a fishing expedition in the hopes it can find evidence of the misconduct it had no good faith reason to allege in the first place. Tesla's Motion also fails because the discovery it seeks is overbroad and not justified even as ordinary discovery, much less on an expedited basis.

**A.    Tesla Misrepresents Li's Access of Documents on His Last Day of Work**

Tesla's theory that Li accessed documents on his mobile phone after business hours and after he returned his computer to Tesla is based on a misrepresentation of the documentary evidence attached to the declaration of Jeff Liang, Tesla's Staff Investigator, Security Intellgence,

3

1  signed *before* Tesla filed its Complaint in this action. (Dkt. 14-33.) Relying on logs from Li's

2  Tesla Microsoft 365 account to form the basis of his account of Li's document access, Mr. Liang

3  states, under oath, that Li returned his computer at 2:00 p.m. PDT, on September 13, 2024, but

4  continued to access Tesla documents from his mobile phone after business hours—until 8:55 pm

5  PDT the same day. To support this claim, Mr. Liang cites to Tab J of Exhibit A to his declaration.

6  *Id.* ¶ 6.j, Exh. A (Dkt. 17-5, Tab J). According to this exhibit, and assuming the logs are accurate[1],

7  this statement is false for several reasons.

8         First and most importantly, the documents *do not show* that Li accessed *any* Tesla

9  document from *any device* after business hours on September 13, 2024. (Declaration of Lucas

10  Woodland ("Woodland Decl.") ¶¶ 23–24.) The timestamps in Exhibit A are "presented in

11  Coordinated Universal Time (UTC)." (Dkt. 14-33 ¶ 6.a.) UTC is seven hours *after* PDT. *See* 15

12  USC § 261. The *latest* event in *all* of Exhibit A is 21:51 UTC time, on September 13, 2024. (Dkt.

13  17-5, Tab J, First Row.) 21:51 UTC is 14:51 (2:51 pm) PDT.

14         Second, the documents *do not* show that Li accessed *any* Tesla document from his phone

15  after turning in his computer. Indeed, the latest event shows access using his *Tesla-provided*

16  Zbook Studio Computer, and *not* with his mobile phone. (*See id.*; Dkt. 14-33 ¶ 5.)

17         Third, this entry shows Li still had his Tesla-issued computer *after* 2 pm, contradicting Mr.

18  Liang's sworn statement. *Id.*

19         Fourth, Tab J of Exhibit A does not show that Li accessed the Tesla SharePoint until 8:55

20  pm PDT, again contradicting Mr. Liang's sworn statement. (Woodland Decl. ¶ 23.)

21         Fifth, the logs suggest that the latest time Li accessed a file using his mobile phone was

22  5:26 UTC on September 13, or 22:26 (10:26 pm) PDT on *September 12*, 2024, the day *before* Li's

23  last day at Tesla. (Dkt. 17-5.)

24         Tesla should have realized it misread its logs before repeating it several times in publicly

25  filed pleadings, particularly since Mr. Liang testifies to Tesla's policy of "promptly deactivat[ing]

26  an] employee's permissions" after resignation. (Dkt. 14-33 ¶ 12.) The document logs presented by

27

28  _____
[1] Defendants disagree with Tesla's characterizations and implications regarding the meaning of terms in the logs, such as "FileDownloaded." Tesla has offered no expert to opine on their meaning.

1    Tesla indicate that Li's access in fact took place *during business hours* on his final day, while

2    Tesla continued to provide him with access to Tesla's documents. (Dkt. 17-5.) Tesla's glaring

3    mischaracterizations regarding the times of Li's access leads to only the conclusion that Tesla's

4    evidence, including Mr. Liang's testimony, is neither credible nor reliable.

5            **B.    Mr. Liang Mischaracterizes Li's SharePoint Use**

6           The flaws in Mr. Liang's declaration do not end there. Tesla's own documents do not

7    support Mr. Liang's conclusion that Li "logged into Tesla's SharePoint using a web browser" on

8    July 13 and September 13. (Dkt 14-33 ¶ 6.a,i referring to Dkt. 17-5, tabs A and I). Tesla's

9    evidence indicates that these allegedly confidential documents were accessed from the ████

10   OneDrive folder belonging to ████████[2] (Woodland Decl. ¶ 33.) Because these documents

11   were in a ████ OneDrive folder, Li could not have accessed them by logging onto Tesla's

12   SharePoint from a browser and navigating to that folder. (*Id.* ¶¶ 33–34.) Instead, this document

13   would have had to be sent to Li, likely over Microsoft Teams, from ████, the person with

14   access to the folder. (*Id.*) Teams is referenced in the UserAgent for Li's September 13 access.

15   (Dkt. 17-5, Tab J.) Tesla has inexplicably omitted the UserAgent column in the exhibit showing

16   Li's alleged July 13, 2024 access to the same documents. (*See Id.,* Tab A.) Indeed, it is likely that

17   upon tapping the link received from ████, certain settings resulted in the document opening

18   in a web browser, causing a "FileDownloaded" operation. (Woodland Decl. ¶¶ 25–32.) If the

19   document accessed was ████████████████████████████, then

20   it is less likely that it would open in a browser and result in a "FileDownloaded" operation. (*Id.*)

21   This casts significant doubt on Tesla's assertions that Li surreptitiously "downloaded" documents

22   (which, even if he did, was within the scope of his employment and Tesla policies).

23           **C.    Tesla's Declarants Do Not Support Tesla's Position that Li Had No Legitimate Business Need to Access Documents**

24

25          Tesla's declarants also misleadingly omit material facts, which either Tesla did not

26   investigate or chose not to present to the Court. Tesla asks the Court to infer misconduct from its

27

28   [2] Tesla's' documents include examples of Li receiving other ████ OneDrive documents. (*See* Dkt. 17-5, Tab H (referring to ████████ folder); Tab J ████████ folder)).

1   allegation that Li had transferred from the "hand and foot team" to the "chest computer team" in

2   July 2024 and then had accessed or downloaded files related to former after the transition. Tesla's

3   assertion as to Li's work responsibilities are limited to the barest of testimony from Prem Pinto,

4   who stated he did not even work in the same group as Li. (Dkt. 17-4 ¶ 1.) Mr. Pinto offers no basis

5   for his conclusions that documents allegedly accessed by Li "were outside the scope of Mr. Li's

6   work on the chest computer team." (*Id.* ¶ 5.) Mr. Pinto does not state that the chest computer team

7   was underneath Mr. Pinto's operational purview, or that he has personal knowledge of Li's

8   specific projects. Mr. Pinto does not have personal knowledge about Li's alleged access to Tesla

9   documents, and instead represents that he is "informed" about such access. (*See id.* ¶ 5.a–i.)

10  Moreover, Mr. Pinto admits that he did not review all of the documents Tesla contends are trade

11  secrets. (*See e.g. id.* ¶ 5.e) ("I have reviewed a sample of files.").

12         Moreover, if Tesla in fact believed that Li should have no access to documents relating to

13  hand or foot projects after moving to the chest team (which Defendants dispute), Tesla easily

14  could have implemented security measures to prevent such access. (Woodland Decl. ¶¶ 16–17,

15  34.) That Tesla did not reveals that Li's access was approved for his work for Tesla.

16         For each allegedly accessed document, including the ones the contents of which Mr. Pinto

17  is merely informed, Mr. Pinto simply states that the document "was outside the scope of Li's

18  duties on the chest computer team at the times of his access". (Dkt. 17-4 ¶ 5.b–d.) Mr. Pinto does

19  not state that Mr. Li's work on the chest computer team precluded legitimate hands-related work

20  or collaboration outside of the chest computer team. Likewise, Mr. Liang does not independently

21  state that Li was prohibited from accessing hand-related files. Rather, he refers to Office 365 logs

22  purportedly showing Li's access and says that he too is somehow "informed" that the files were

23  "unrelated to" or "outside the scope" of Li's job responsibilities. (see Dkt. 14-33 ¶ 6). Mr. Liang,

24  however, does not provide any basis for the information he was provided, and as explained above,

25  his Declaration cannot be trusted.[3]

26

27  ───────────────

    [3] Tesla also relies on a declaration from its counsel, Terry Ahearn. But Mr. Ahearn's declaration
28  simply cites to his non-testimonial assertions in correspondence he sent to Li, and provides no
    evidentiary support. (*See* Dkt. 14, at 9:20–10:6; Dkt. 14-9 ¶¶ 9–12.)

1    Missing from any declaration is a statement as to whether Li was consulting or

2    collaborating with personnel working on the hand project that Li had just been working on, or

3    whether Li, in his role at Tesla was permitted access to documents to do so. Tesla, it seems, has

4    not investigated this, though it has known at least since it began purportedly investigating

5    Proception and Li in March 2025, when Proception's corporate counsel explained that Li had

6    accessed files to collaborate with other engineers working on Optimus. (Declaration of Michael

7    Hui in support of Defendants' Opposition to Administrative Motion to Shorten Time ("Hui

8    Decl."), attached as Exhibit 1 to the Declaration of Jaideep Venkatesan ("Venkatesan Decl.").)

9    Indeed, Tesla boasts of its open, non-hierarchical and collaborative work environment, bragging

10   on its website that "[w]e replaced corporate hierarchy and bureaucratic conventions with open

11   communication and a collaborative working environment." (Venkatesan Decl., Exh. 19.) This

12   ethos is a core foundation of Tesla's message to its employees. (*Id.*, Exh. 20.) Tesla nonetheless

13   contends, for purpose of this litigation, that Li could not have been collaborating with personnel

14   working on Optimus while relying on declarants who lack personal knowledge of Li's work. In

15   fact, the evidence supports Tesla's public declarations about its culture—Li was collaborating with

16   other Tesla employees.

17       **D.    Tesla Sought to Prevent This Court from Evaluating Exculpatory Evidence
               After Filing This Action**

18

19   Tesla's efforts to limit the evidence that the Court and Defendants (and the public) could

20   review continued after it filed its motion for preliminary injunction, when it sought to remove *its*

21   *own* evidence supporting Li's explanation that he regularly collaborated with colleagues on a

22   variety of topics, including hand projects. Tesla initially filed a document containing "Splunk

23   Data"[4] as Exhibit F to the Liang Declaration in support of its Motion for Preliminary Injunction.

24   (*See* Dkt. 14-33 ¶ 13) (Original Dkt. 14-39 attached as Exhibit 2 to the Venkatesan Decl.) The

25   originally filed Exhibit F ███████████████████████████████

26

27

28   ─────────────────────
     [4] Splunk is a third party enterprise software that Tesla asserts contains storage logs that record
     events that occur while a computer system is or application is running. (Dkt 14-33 ¶ 13, n.2.)

DEFENDANTS PROCEPTION, INC. AND JAY LI'S OPPOSITION TO PLAINTIFF'S MOTION FOR
EXPEDITED DISCOVERY, Case No. 5:25-cv-04963-SVK

(Venkatesan Decl. Exh. 2.) Tesla did not file this document under seal.[5] Two days after Tesla filed its motion, along with this document, Tesla filed an administrative motion to remove Exhibit F from the docket, Dkt. 19, and replace it with a document that listed only two events showing Li's receipt of a single email. (*Compare* Exh. 2 to Venkatesan Decl. *with* Dkt. 40.) In support of its Motion, Tesla did not assert that this was an improperly filed privileged document, or seek to seal a mistakenly unsealed document. (Dkt. 19.) Tesla first demanded that Defendants "discard" the originally filed Exhibit F, then agreed that Defendants could retain and use it in the litigation provided they file it under seal. (Venkatesan Decl., Exhs. 16, 17.)

Some of Li's collaboration with Tesla employees ███████████████████ and other documents filed by Tesla. For example, Tesla points to Li's access to a document titled █████████████████ (Dkt. 17-5, Exh. A, Tab H.) ██████████████ ███████████████████████████████████ (Venkatesan, Exh. 3.) Li managed ██████ before he moved to the chest project and they both left Tesla at around the same time ████████████████ *Id.* Exh. 2 ████ ███████████████████. Li's access to this ████████ during his final days at Tesla indicates that Li was assisting ████████ with her ████████ ████████, and strongly supports Li's understanding of Tesla's culture of collaboration.

Additionally, the original Exhibit F Splunk Data includes numerous examples of ████████ ████████████████████████████████████████ This document shows that Li had ████████ ███████████████████████████████████ (Venkatesan, Exh. 4.) Li also had several ████████████████████████████ (*Id.*, Exhs. 5, 6.) He ███████████████████████████████ ███████████████████████████████ (*Id.*, Exh. 7.) He ████████████████████████████

---

[5] Defendants have preliminarily filed this document under seal to permit Tesla to address sealing.

1  ████████████████████ (*Id.*, Exh. 8.) He also ████████████████████████

2  ████████████████████████████ (*Id.*, Exhs. 9, 10.)

3      The original Exhibit F not only shows ████████████████ it shows that

4  even on his last day, ████████████████████████████████

5  ████████████████████████████████████████████

6  ████████████████ The Splunk Data refers to ████████████████████

7  ████████████████████████████████████████████

8  ████████████████████████████████ and others. (*Id.*, Exh. 2.)

9  Several of these appear to be ████████████████████████

10 ████████████████████████████████ Li was clearly a valuable

11 part of the robot program and allowed to ████████████████████████

12 ████████████████████████████ Tesla chose to only show

13 (apparently accidentally) the Court a portion of Splunk Data showing Li's activity, from 12:02

14 PST to 4:12 PST on September 13, 2025. Does the remaining data for July 2024–September 2024

15 also support that Li's access was part of his collaboration with other engineers working on projects

16 for the Optimus Group? It is not clear if Tesla has reviewed those logs, and it certainly has not

17 provided them to Defendants or the Court.

18     Proception's counsel explained Li's collaboration to Tesla, and Mr. Liang signed his

19 declaration *before* Tesla filed its Complaint and motion for Preliminary Injunction. Rather than

20 actually investigate to determine if Tesla had legitimate concerns, Tesla planned to publicly go

21 after Li, regardless of the validity of its claims.

22 **III.     TESLA'S DELAY PRECLUDES EXPEDITED DISCOVERY**

23     Tesla contends this expedited discovery "is needed to prevent further harm and ensure that

24 evidence is not destroyed or altered." (Dkt. 15 at 7.) Tesla argues that "[w]ithout expedited

25 discovery, there is a serious risk that critical evidence may be lost or overwritten, and that Tesla

26 will suffer irreparable competitive harm." (*Id.*)

27     But Tesla has not established a risk of "irreparable competitive harm", and courts deny

28 requests for expedited discovery absent irreparable harm. *See Total Access Payments, Inc. v.*

9

*Maximum Bus. Innovations, Inc.*, CV 10-5475-GHK(RCx), 2010 U.S. Dist. LEXIS 153036, at *4 (C.D. Cal. August 3, 2010) (denying expedited discovery where no showing of irreparable harm if discovery conducted after Rule 26(f) conference); *Hopscotch Adoptions, Inc. v. Kachadurian*, NO. CV F 09-2101 LJO, 2009 U.S. Dist. LEXIS 121763, at *6-7 (E.D. Cal. December 7, 2009) (denying expedited discovery "in the absence of identifiable irreparable harm or good cause for expedited discovery"); *Cleanfish, LLC v. Sims*, NO. 19-CV-03663, 2019 U.S. Dist. Lexis 108946, at *2, 11-12, 17 (N.D. CA June 28, 2019) (denying TRO and expedited discovery for plaintiff's trade secret claims where no likelihood of success or irreparable harm). Here, Tesla encountered no issues with Li when he left Tesla, investigating him only after he started a company it views as a threat. Tesla then waited months before seeking relief, undermining any claim of urgency.

### A.    Tesla Decides to Investigate Li Six Months After He Leaves Tesla

Li left Tesla without incident in September 2024 to pursue his dream of starting a company. But when Proception released a video in March 2025 showing the prototype hand that Proception had invested significant resources in time and personnel to develop, Tesla made it a target. Tesla purportedly conducted an internal investigation and on March 31, 2025, its in-house counsel, Terry Ahearn, sent Li a letter asserting the only issue it could find—that Li *may* have misappropriated trade secrets because he accessed documents related to the hand project while he was a Tesla employee. (Hui Decl. ¶ 2, Exh. A.) On April 4, 2025, Proception's outside corporate counsel, Michael Hui, responded, asking Mr. Ahearn to contact him to discuss the issues Tesla raised in greater detail. (*Id.* ¶ 3, Exh. B). During an April 9, 2025 conference call with Mr. Ahearn and a Tesla colleague, Mr. Hui explained that Li had not misappropriated any Tesla proprietary or confidential information, and that his access to Tesla materials while employed was consistent with his job responsibilities and expectations at Tesla, which included collaborating with other Tesla employees on Optimus. (*Id.* ¶ 4). Nonetheless, Mr. Ahearn demanded unfettered real-time access to Proception's electronic systems and Li's devices. Mr. Hui responded that Proception could not evaluate such an overbroad request absent clarity as to what Tesla claimed was misappropriated. He specifically asked Mr. Ahearn to identify the particular Tesla information that Tesla believed was misappropriated, or any file paths that Tesla believed had been accessed

10

without authorization. (*Id.* ¶ 5). Mr. Ahearn declined to provide any such detail, ironically stating that Tesla did not want to provide Mr. Hui "free discovery." (*Id.*) Despite waiting over two months to file, Tesla was obviously planning for litigation from the beginning.

Mr. Hui spoke with Mr. Ahearn and his colleague again on April 18, 2025. (*Id.* ¶ 7.) Mr. Hui again explained to Mr. Ahearn that neither Proception nor Li could meaningfully address Tesla's demands without understanding the nature of Tesla's allegations. Mr. Hui reiterated Proception's willingness to consider reasonable, targeted remedial measures if Tesla would identify actual instances of wrongdoing. Again, Mr. Ahearn refused to agree to reciprocal information sharing, and instead responded by repeating Tesla's demand for unrestricted access to all of Proception's systems and Li's devices. (*Id.* ¶ 7.)

On April 21, 2025, Mr. Hui sent an email to Mr. Ahearn memorializing their previous communications and asking for specific information of the alleged wrongdoing. (*Id.* ¶ 8.) Neither Mr. Ahearn nor any other Tesla employee responded to Mr. Hui or identified to him the trade secrets or confidential information Tesla believed Proception or Li had misappropriated. (*Id.* ¶ 9.)

### B. Tesla Delays Seeking Relief, Creating Its Own Emergency

On June 9, 2025, over two months after Tesla initially contacted Li, Angelique Kaounis, Tesla's outside counsel, sent Mr. Hui correspondence demanding that Proception and Li enter into a stipulated injunction. (*Id.* ¶ 10.) Proception and Li retained Bergeson, LLP the next day. (Venkatesan Decl. ¶ 12.) On June 11, 2025, Mr. Venkatesan asked Ms. Kaounis for a call on June 13, 2025, hoping to discuss Ms. Kaounis's June 9, 2025 letter and explore a resolution. (*Id.* ¶ 13, Exh. 11.) Ms. Kaounis responded on June 11, 2025 at 7:21 PM PDT asking if Bergeson would accept service of a complaint on behalf of Proception and Li. (*Id.* ¶ 14, Exh. 12). On June 12, 2025, Mr. Venkatesan learned, based on a news article published at 4:51 am PDT, that Tesla filed a lawsuit the day before. (*Id.* ¶ 15, Exh. 13.) Desiring to investigate the newly-filed complaint's allegations, Mr. Venkatesan responded to Ms. Kaounis on June 12, 2025 that he would follow up the following week. (*Id.* ¶ 16, Exh. 14.) Counsel for the parties spoke on June 16, 2025, and that evening Tesla filed its Motion for a Preliminary Injunction and Motion for Expedited Discovery— over two months after Tesla discovered the activity that is its sole basis for seeking relief.

1      Courts will find there is no irreparable harm where a party has delayed seeking injunctive

2  relief. *See Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985)

3  ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and

4  irreparable harm."); *Lydo Enters., Inc. v. Las Vegas*, 745 F.2d 1211, 1216–17 (9th Cir. 1984)

5  (preliminary injunction not justified where plaintiff delayed filing); *Norsat Int'l v. B.I.P. Corp.*,

6  No. 12cv674-WQH-NLS, 2013 U.S. Dist. LEXIS 144149, at *25 (S.D. Cal. Oct. 3, 2013) (finding

7  that delay in seeking preliminary injunctive relief undercuts argument of immediate, irreparable

8  harm); *Way.com, Inc. v. Singh*, No. 3:18-cv-04819-WHO, 2018 U.S. Dist. LEXIS 215243, at *30–

9  31 (N.D. Cal. Dec. 2, 2018); *Gigacloud Tech., Inc. v. Linon Home Décor Prods.*, No. CV 24-

10 4308-CBM-AGRx, 2024 U.S. Dist. LEXIS 207786, at *11–12 (C.D. Cal. Sep. 8, 2024).

11     For example, *Gigacloud* involved allegations that a former employee downloaded files

12 before employment with a new company. The plaintiffs waited nearly five months to file a lawsuit

13 after sending the defendants a cease and desist letter. The court stated that the plaintiffs' delay

14 "implies a lack of…irreparable harm. Therefore, Plaintiffs fail to demonstrate a likelihood of

15 irreparable harm absent a preliminary injunction." *Gigacloud*, 2024 U.S. Dist. LEXIS 207786, at

16 *11–12 (internal citations omitted).

17     In *Way.com*, the court cited the plaintiff's three-month delay as one of the reasons for its

18 denial of the motion for preliminary injunction: "Way argues that without a preliminary

19 injunction, the defendants will continue to use its trade secrets to secure partnerships and negotiate

20 prices…But Way waited until October 19, 2018 to file its motion for a TRO despite learning about

21 Singh's alleged conduct as early as July 28, 2018." *Way.com*, at *30–31.[6]

22     Similarly, in this case Tesla's own conduct demonstrates a lack of urgency and undermines

23 its claim of irreparable harm justifying expedited discovery. Tesla first raised its concerns with Li

24

25 _____

[6] Tesla's reliance on *Comet Techs. USA Inc. v. Beuerman*, No. 18-CV-01441-LHK, 2018 U.S.
26 Dist. LEXIS 224356, (N.D. Cal. Mar. 15, 2018) and *Weride Corp. v. Huang*, 379 F. Supp. 3d 834,
854–855 (N.D. Cal. 2019) is misplaced, as neither plaintiff delayed filing like Tesla. In addition,
27 *Comet* involved a request for a temporary restraining order and the expedited discovery requested
was much narrower than what Tesla has requested in this action. In *Weride,* the court took into
28 consideration defendants' deletion of computer files on at least two relevant devices in deciding to
allow expedited discovery, *Weride*, 379 F. Supp. 3d at 854–855, facts not present in this action.

on March 31, 2025, yet waited more than two months—until June 11, 2025—to file its Complaint and seek preliminary relief (Hui Decl. ¶ 2; Venkatesan Decl. ¶ 15). During this period, Proception repeatedly requested that Tesla identify the specific information at issue and offered to discuss reasonable, targeted remedial measures (Hui Decl. ¶¶ 3–9). Tesla refused to provide any such detail, instead insisting on unrestricted access to all of Proception's systems (Hui Decl. ¶¶ 5–7, 9).

Tesla's protracted delay in seeking judicial intervention, despite knowing of the alleged conduct since at least March 2025, "implies a lack of urgency and irreparable harm." *Oakland Tribune*, 762 F.2d at 1377. Tesla's failure to act promptly is telling given its assertion that Defendants' alleged conduct poses an imminent threat to its trade secrets and competitive position. If Tesla truly faced irreparable harm, it would not have waited months to seek relief. Tesla's delay underscores the harassing nature of its requests. When Tesla first contacted Li in March, Proception's corporate counsel tried to work with Tesla but was rebuffed. Two months later, Tesla filed its Complaint and suddenly demanded immediate action, forcing Defendants to quickly retain litigation counsel. Tesla is now attempting to force Defendants to respond to extensive discovery on a shortened time frame, a process designed to inflict as large a burden as possible.

Tesla tries to justify its delay by arguing that it needed two months to retain outside counsel, and that it "reached out to Defendants' counsel multiple times before bringing claims against a former employee, which it viewed as a last resort". (Dkt. 32-1 at 3.) But Tesla refused to cooperate with Defendants because it did not want to give "free discovery"—litigation was not a "last resort". (Hui Declaration ¶ 5.) Tesla did not apply for temporary restraining order to preserve the status quo on an emergency basis. Instead, it took two months to prepare a complaint and preliminary injunction papers that it claims must now be decided on an emergency basis.

Tesla's refusal to engage in meaningful dialogue or to identify the specific trade secrets or documents at issue further belies its claim of urgency. This conduct is inconsistent with a party facing imminent and irreparable harm.

1

2

## IV.    TESLA IS NOT ENTITLED TO EXPEDITED DISCOVERY BECAUSE IT HAS NOT SATISFIED CAL. CODE CIV. PROC. § 2019.210

Courts in this District have long held that a plaintiff seeking discovery in a trade secrets

misappropriation case under the DTSA or the CUSTA must identify its trade secrets with

reasonable particularity as required by California Code of Civil Procedure section 2019.210. *See*

*Commure, Inc. v. Canopy Works, Inc.*, No. 24-cv-02592-NW, 2025 U.S. Dist. LEXIS 75048, at *5

n.3 (ND. Cal. April 18, 2025) ("The Court agrees with the decisions in this District concluding

that section 2019.210 properly may be applied and enforced in federal litigation"); *Sylabs, Inc. v.*

*Rose*, No. 23-cv-00849-SVK, 2025 U.S. Dist. LEXIS 87588, at *3 (N.D. Cal. May 7, 2025) (court

stayed discovery pending resolution of dispute over the plaintiff's section 2019.210 Statement).

Courts require plaintiffs to identify trade secrets with sufficient particularity because defendants

need "concrete identification" to prepare a rebuttal. *Inteliclear, LLC v. ETC Global Holdings, Inc.*,

978 F.3d 653, 658 (9th Cir. 2020) (citing *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167

(9th Cir. 1998)).

Tesla did not serve a section 2019.210 disclosure, unlike the plaintiffs in cases Tesla cites,[7]

and it does not assert in its Motion that it complied with section 2019.210. Tesla's Motion ignores

Section 2019.210, though it asks the Court to order Defendants to provide burdensome discovery

relating to Tesla's trade secret claims. Tesla's Motion should be denied on this ground alone.

Tesla's Motion for a Preliminary Injunction includes one paragraph asserting that it

complied with section 2019.210 by identifying trade secrets in paragraphs 6 of the Liang

Declaration and paragraph 5 of the Pinto declaration. (Dkt. 14 at 12.) But Tesla cannot skip

serving a section 2019.210 disclosure and rely on portions of publicly filed declarations. *See Loop*

*AI Labs, Inc. v. Gatti*, No. 15-cv-00798-HSG, 2015 U.S. Dist. LEXIS 170349, at *10–13 (N.D.

Cal. December 21, 2015) (finding a plaintiff's "ersatz 'trade secret disclosure'" of pleadings and

declarations insufficient and ordering Plaintiff to serve a "thorough and complete" disclosure).

---

[7] *See Weride Corp.*, 379 F. Supp. 3d at 845–46 (court analyzed plaintiff's section 2019.210 trade-secret designation); *Solarpark Korea Co., Ltd. v. Solaria Corp.*, No. 23-cv-01181-AMO, 2023 U.S. Dist. LEXIS 134650, at *8–12 (N.D. Cal. Aug. 2, 2023) (court repeatedly references and evaluates the plaintiff's "Identification of Trade Secrets pursuant to California Code of Civil Procedure Section 2019.210")

14

1   "Plaintiff's 'disclosure' through designation of certain paragraphs in pleadings and declarations is

2   no substitute for specifically identifying and describing the actual claimed trade secrets in order 'to

3   permit [Defendants] to ascertain at least the boundaries within which the secret[s] lie[].'" *Id.*, at

4   *12. To support the sufficiency of its identification, Tesla's Motion for a Preliminary Injunction

5   cites only to *Beluca Ventures LLC v. Einride Aktiebolag*, 660 F. Supp. 3d 898, 908 (N.D. Cal.

6   2023), where a court denied a motion to dismiss because a complaint sufficiently pled a trade

7   secret claim. Section 2019.210 sets a much more exacting standard. *Albert's Organics, Inc. v.*

8   *Holzman*, No. 19-cv-07477-PJH, 2020 U.S. Dist. LEXIS 135492, at *6 (N.D. Cal. July 30, 2020)

9   (distinguishing standard for motion to dismiss from standard for section 2019.210 and citing

10  *Gatan, Inc. v. Nion Co.*, No. 15-cv-01862-PJH, 2018 U.S. Dist. LEXIS 77735 (N.D. Cal. May 8,

11  2018)); *Gatan*, 2018 U.S. Dist. LEXIS 77735, at *5–6 (explaining that court's order on motion to

12  dismiss "did not prejudge whether plaintiff's trade secret allegations satisfied § 2019.210").

13          The identified paragraphs of the Pinto and Liang declarations fall far short of this and other

14  courts' requirements for a sufficient identification of trade secrets. Section 2019.210 requires a

15  plaintiff to identify the trade secrets with "sufficient particularity" to distinguish the trade secrets

16  from "matters of general knowledge in the trade or of special knowledge of those persons skilled

17  in the trade.'" *See, e.g.*, *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal.App.4th

18  826 (2005). This requires "adequate detail to allow the *defendant* to *investigate* how [each asserted

19  trade secret] might differ from matters already known and to allow the court to craft relevant

20  discovery.'" *Alta Devices, Inc. v. LG Elecs., Inc.*, No.18-cv-00404-LHK, 2019 U.S. Dist. LEXIS

21  5048, at *4 (N.D. Cal. Jan. 10, 2019) (emphases in original). A proper identification must permit

22  the defendant to ascertain the boundaries of the alleged secrets. *See M/A COM Tech. Sols., Inc. v.*

23  *Litrinium, Inc.*, 8:19-cv-00220-JVS (JDEx), 2019 U.S. Dist. LEXIS 228417, at *5–6 (C.D. Cal.

24  Sep. 3, 2019) (inadequate descriptions "are not sufficiently concrete, leaving room for the

25  designating party to change the meaning of the trade secret after the completion of discovery").

26  The purpose of Section 2019.210 is as follows:

27          First, it promotes well-investigated claims and dissuades the filing
            of meritless trade secret complaints. Second, it prevents plaintiffs
28          from using the discovery process as a means to obtain the

15

1
2
3

> defendant's trade secrets. Third, the rule assists the court in
> framing the appropriate scope of discovery and in determining
> whether plaintiff's discovery requests fall within that scope.
> Fourth, it enables defendants to form complete and well-reasoned
> defenses, ensuring that they need not wait until the eve of trial to
> effectively defend against charges of trade secret misappropriation.

4
5
6
7
8
9

*Brescia v. Angelin*, 172 Cal. App. 4th 133, 144 (2009) (citing *Advanced Modular*, 132 Cal. App. 4th at 833–834). The statute also aims to protect a trade secret defendant from "potentially costly litigation and discovery" and to "give both the court and the defendant reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery." *Id.,* at 144 (internal citations omitted) (citing *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968)).

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Paragraphs 5 of the Pinto Declaration and 6 of the Liang Declaration and the associated exhibits simply provide file names of documents that are not provided, and summarizes them in broad categories (that are not even filed under seal) such as "sensor diagrams and specifications related to Optimus's hand motion and actuators", or "sensor and flex testing data and hand model iterations" or "sketches and diagrams, material specifications, and feasibility studies". (Pinto Decl. ¶ 5; Liang Decl. ¶ 6.) Broad categories such these do not identify trade secrets. Tesla does not explain what are in the diagrams, specifications or data that it contends are included in its trade secrets. These categories could just as easily be referring to publicly available information, and provide no way for the Defendants to investigate the boundaries of the trade secrets or for the Court to establish the parameters of appropriate discovery. For example, Tesla refers to "material, strength, and sensor design data and calculations"—something that could be easily calculated using publicly available tools. (*See* Venkatesan Decl. ¶18, Ex. 15). Are Tesla's calculations different? Neither Defendants nor the Court can tell, because Tesla has not provided or even described the data and calculations. *See Gatan, Inc*., 2018 U.S. Dist. LEXIS 77735, at *7–8 (trade secret designation insufficient under § 2019.210 where "many of Gatan's designations could include not only any of Nion's spectrometer data but also any company's spectrometer data" while "other designations are so vague that they could apply to any spectrometer").

27
28

Tesla does not even provide the documents it believes contain trade secrets, much less describe the trade secrets within them. This is insufficient. While a party "is free to cite to and

16

incorporate portions of documents in its trade secrets disclosure without reproducing the text of those documents, it may not simply refer to a document in its entirety as 'including' trade secrets, without specifying what the trade secret is." *Carl Zeiss X-Ray Microscopy Inc., v. Sigray, Inc.*, No. 21-cv-01129-EJD (VKD), 2021 U.S. Dist. LEXIS 216806, at *12–13 (N.D. Cal. Nov. 9, 2021); *M/A COM Tech. Sols., Inc.*, 2019 U.S. Dist. LEXIS 228417, at *11 (failure to provide copies of documents prevented court from determining if disclosure is reasonably particular).

Tesla's assertion that Defendants misappropriated highly technical and sensitive information *increases* their burden under section 2019.210. Where, as here, "the alleged trade secrets constitute incremental variations on preexisting technology in a highly specialized technical field, 'a *more exacting level of particularity* may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field.'" *Alphonso Inc. v. Tremor Video, Inc.*, 22-cv-03629-NC, 2022 U.S. Dist. LEXIS 233195, at *10 (N.D. Cal. Oct. 31, 2022) (emphases added) (citing *Advanced Modular*, 132 Cal. App. 4th at 836 (granting defendant's motion to stay discovery pending a more detailed trade secret disclosure pursuant to Section 2019.210); *see also Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1113–1116 (N.D. Cal. 2016) (applying "more exacting level of particularity" standard);;T *Brescia*, 172 Cal. App. 4th at 148 (same). Tesla tries to meet this standard by using buzzwords such as proprietary research and analysis, benchmarks, performance targets, equations, and sketches—again, failing to explain what exactly is the "research and analysis" or "equations" that are the trade secrets. But Tesla is required to provide "some explanation of *how* such processes or products are distinct from other advancements in the field," and "technical surplusage is no substitute for such descriptions of functionality." *Alphonso*, 2022 U.S. Dist. LEXIS 233195, at *10 (emphasis in original).

Accordingly, Tesla's Motion should be denied because it has failed to serve a section 2019.210 identification of trade secrets and identify its trade secrets with reasonable particularity.

## V. TESLA'S DISCOVERY IS OVERBROAD AND DOES NOT MEET THE STANDARD FOR EXPEDITED DISCOVERY

Although Tesla's motion for preliminary injunction is pending in this case, "expedited discovery is not automatically granted merely because a party seeks a preliminary injunction." *Am.*

1   *LegalNet*, 673 F. Supp. 2d at 1066; *Kayvan v. Pompeo*, Case No. 5:19-CV-080710EJD, 2020 U.S.

2   Dist. LEXIS 22040, at *3 (N.D. Cal. Feb. 4, 2020) ("although there is a preliminary injunction

3   motion pending, this factor alone does not justify expedited discovery."); *Engelbrecht v. Experian*

4   *Info. Servs., Inc.*, No. 5:12-CV-01547, 2012 U.S. Dist. LEXIS 205545, at *8 (C.D. Cal. Nov. 16,

5   2012) (denying motion for expedited discovery notwithstanding a pending motion for preliminary

6   injunction.) In preliminary injunction situations, expedited discovery must still be limited to topics

7   that are relevant to determination of the request for preliminary injunctive relief and balanced

8   against the burden placed on the producing party. *See American LegalNet*, 673 F. Supp. 2d at

9   1068–1069 (denying request for expedited discovery where the scope was not limited to

10  information pertinent to a pending motion for preliminary injunction.).[8]

11  **A.    Tesla's Proposed Discovery Requests Are Overbroad And Burdensome**

12          Tesla contends that its requested expedited discovery is "narrowly tailored to obtain

13  essential information regarding the extent to which Defendants are using or disseminating Tesla's

14  trade secrets." (Motion at 4.) But even a cursory review of the requests belies this contention.

15  Tesla seeks written discovery from Defendants within ten days of service, with depositions to take

16  place one week thereafter, described by Tesla as:

17      ▪ Document requests to Proception and Li, "including forensic inspection of data sources
          (e.g., devices, cloud and email accounts) in Defendants' possession that *may* contain
18        Tesla trade secrets".
        ▪ Interrogatories to Proception and Li seeking the identification of broad categories of
19        persons and devices.
        ▪ Depositions of Proception and Li "relating to Defendants' acquisition, use, and
20        disclosure of Tesla's trade secrets (and correspondingly, the design and development of
          Proception's robotic hand technology) to ensure that the scope of any misappropriation
21        is identified and cabined immediately"

22  Motion at 6. As detailed below, Tesla's proposed discovery requests are vastly overbroad and

23  disproportionate to the needs of the case.

24

25

26  ───────────────────
    [8] While the court in *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK 2011, U.S. Dist.
27  LEXIS 53233 (N.D. Cal. May 18, 2011), a case relied on by Tesla, allowed expedited discovery in
    advance of filing a motion for preliminary injunction, there was no indication in that case, as there
28  is here, as set forth herein, that the plaintiff delayed before filing its action.

1.    **Document Requests**

**Document Request No. 3** to Proception and Li seeks:

> A Forensic Copy (image) of all laptops, computers, USB drives, other Electronic
> Devices, storage repositories and email accounts utilized by You in the planning,
> development, marketing of, or seeking financing for, your product, that You use to
> gain access to, copy, download, transmit, store, or otherwise modify electronic
> data, including any Tesla Proprietary Information or files originating from a Tesla
> network.

RFP No. 3 to Proception and Li.

Tesla has not submitted facts to support an order compelling Defendants to turn over their electronic devices for inspection by a forensic expert retained by Tesla. Courts will not issue orders requiring forensic examination in these circumstances. For example, in *Advante International Corporation v. Mintel Earning Technology*, No. C05-01022-JW (RS), 2006 U.S. Dist. LEXIS 45859 (N.D. Cal. June 29. 2006), the defendant filed a motion to compel a forensic examination of the plaintiff's computer system. The defendant argued that a forensic examination was warranted because the plaintiff was concealing evidence, misrepresenting facts, and engaging in misconduct. *Id.*, at *1. The court denied the motion, explaining as follows:

> Had [defendant] made the same basic accusations in an earlier age,
> its claims of incomplete document production, inconsistencies, or
> even perjury and destruction of evidence, would not automatically
> entitle it to an order permitting it to enter [plaintiffs'] offices to
> rummage through filing cabinets and desks. The relief [defendant]
> is asking for here is not different and no more warranted.
> Furthermore, notwithstanding the breadth of accusations
> [defendant] has leveled, it has not presented specific, concrete
> evidence of concealment or destruction of evidence sufficient to
> conclude that a forensic examination of the vast scope is warranted
> at this juncture, even under an examination protocol that would
> protect the other parties' legitimate privacy and other interests.

*Id.*

Similarly, in *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072 (N.D. Cal. 2016), in conjunction with its application for a temporary restraining order, the plaintiff made multiple requests to preserve materials that the plaintiff alleged the defendant Cook misappropriated. The plaintiff demanded that it be able to immediately obtain, through a forensics expert, a "clone" or "mirror image" of data in defendant's personal e-mail accounts, her personal iPad, iPhone, computers, other mobile devices, and any other computer storage drives, arguing because defendant already sought to destroy evidence—by deleting her e-mails from her work account to

19

her personal account, it is likely she would attempt to destroy evidence again. The court denied the request, holding:

> This argument does not justify an intrusion into Cook's personal data and devices without first providing Cook an opportunity to respond to Plaintiff's contentions. Cook will already be obligated, under both the Federal Rules of Civil Procedure and this order, to avoid altering, damaging, or destroying any evidence, electronic or otherwise, that is related to this litigation. If she nevertheless fails to comply with this obligation, Plaintiff may move for sanctions or other appropriate remedies.

*Id.*

Similarly, Tesla seeks a forensic examination before Defendants have the opportunity to respond to Tesla's contentions— but Tesla will not even provide copies of the documents it believes were misused to enable Defendants to address Tesla's allegations.

In *American LegalNet,* 673 F. Supp. 2d at 1069 (C.D. Cal. 2009), the plaintiff brought claims against a former employee for copyright infringement, breach of contract, trade secret misappropriation, and other torts related to alleged solicitation of the plaintiff's customers and employees. *Id.,* at 1064–1065. The plaintiff sought expedited discovery including the defendant's deposition, a forensic examination including a mirror image of the defendant's computer hard drives, and production of various categories of documents related to its underlying claims. *Id.,* at 1067–1068. The court denied the requests stating "[c]learly, the discovery plaintiff seeks is not 'narrowly tailored to obtain information relevant to a preliminary injunction determination,' and instead goes to the merits of plaintiff's claims in this action." *Id*., at 1069. The court further noted that the requests for discovery were "unrestrained as to time and scope," and that such "broad discovery…should be pursued more properly within the structure and supervision afforded by a court-approved scheduling order under Fed. R. Civ. P. 16(b)." *Id.,* at 1070–1071. Accordingly, the court found that no good cause existed and denied the plaintiff's request for expedited discovery.

Similarly, Tesla's requests for forensic images of all of Defendants' electronic devices and email accounts relating to Proception's product and corresponding deposition testimony are vastly overbroad, as they essentially seek information about the entirety of Proception's company and Li's personal data. Tesla's requests would require Defendants to undertake an intrusive review of all their electronic systems, devices, and accounts, with no guidance as to what information is

1    actually at issue. This is precisely the type of overbroad and unduly burdensome discovery that

2    courts routinely reject, especially at the preliminary stages of litigation.

3          Moreover, Tesla's refusal to identify the specific trade secrets or documents at issue

4    deprives Defendants of any meaningful opportunity to conduct an investigation and respond to

5    Tesla's allegations. As the Hui and Venkatesan Declarations make clear, Defendants repeatedly

6    requested such information, to no avail (Hui Decl. ¶¶ 5, 7–9; Venkatesan Decl. ¶ 17). Tesla's

7    insistence on broad, intrusive discovery without any specificity is unjustified and improper.

8          **Requests for Production No. 2** to Proception and Li seeks:

9          All Documents and Communications embodying, identifying, describing, relating
           to, or referring to any Tesla Proprietary Information as described in [Li's] Non-
10         disclosure Agreement with Tesla.

11   (Dkts. 15-1 and 15-2 at RFP No. 2).

12         These requests are vague, ambiguous, and overbroad. The Proprietary Information clause

13   in Li's Non-Disclosure Agreement with Tesla defines "Proprietary Information" in pertinent part

14   as "all information, in whatever form and format, to which I have access by virtue of and in the

15   course of my employment by the Company" followed by a long list of categories of documents

16   encompassing anything an employee might encounter. Li's 2022 NDA, § 1 (Ahearn Decl., Exh.

17   A). This definition is overbroad because it could include *any* document to which employees had

18   access to while employed at Tesla – such as invitations, reimbursement requests, or expense

19   receipts, regardless of whether they were personal or confidential to Tesla. The definition provides

20   no certainty to Defendants as to what exactly is Proprietary Information under the NDA, and

21   provides no basis to determine what documents should be collected. *See Brown v. TGS Mgmt. Co.,*

22   57 Cal. App. 5th 303, 316, 319 (2020) (finding confidentiality provision similar to Tesla's

23   unenforceable and "strikingly broad" and that they "patently violate[d] section 16600," as a "de

24   facto noncompete provision"); *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.,* 28 Cal. App.

25   5th 923, 928–929 (2018) (finding confidentiality provision similar to Tesla's an unenforceable

26   restraint on employment); *Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 577 (2009)

27   (finding confidentiality clauses unenforceable because they were "not narrowly tailored or

28   carefully limited to the protection of trade secrets, but are worded as to restrain competition.")

1  Tesla's definition of "Proprietary Information" ("all information, in whatever form and

2  format, to which I have access by virtue of and in the course of my employment by the

3  Company") is as overbroad as the ones rejected in *Brown*, *AMN,* and *Dowell,* and is similarly

4  overbroad for purposes of discovery. The NDA lists nonexclusive examples of "Proprietary

5  Information" that even if exclusive are still overbroad. The examples include such amorphous

6  terms as "concepts" and "ideas," which could include anything an employee encountered in the

7  course of their employment at Tesla—even "ideas" exchanged between employees unrelated to

8  Tesla. This information would fall within Tesla's "Proprietary Information" so long as it was

9  accessed "by virtue of and in the course of" an employee's Tesla employment. For all of these

10  reasons, Request No. 2 to Proception and Li, seeking documents regarding Tesla "Proprietary

11  Information" as outlined in Mr. Li's NDA, is vague, ambiguous, and grossly overbroad.

12  **Request for Production No. 1** to Proception and Li seeks:

13  All Documents and Communications identifying, describing, relating to, or referring to
   Tesla's or Optimus's computer networks, email systems, physical or virtual data
14  repositories, or physical buildings/office location.

15  (Dkts. 15-1 and 15-2 at Request No. 1)

16  This request is vague and ambiguous, as it includes any reference to undefined Tesla or

17  Optimus systems, and could easily involve documents unrelated to claims of misappropriation of

18  trade secrets.

19  **2.    Interrogatories**

20  The proposed interrogatories are also vague and overbroad. **Interrogatory No. 1** states:

21  Identify all Persons to whom You have disclosed any Tesla information or files
   originating from a Tesla network or any of Tesla's Proprietary Information as
22  described in [Li's] Non-Disclosure Agreement with Tesla.

23  (Dkts. 15-3 and 15-4 at Interrogatory No. 1)

24  The reference to "Proprietary Information" is vague, ambiguous, and overbroad for the

25  reasons noted above. In addition, the phrase "Tesla information or files originating from a Tesla

26  network" is also vague, ambiguous, and overbroad as it encompasses trivial or non-confidential

27  information. The request is not limited in subject matter or scope and may require speculation or

28  identification of individuals with whom Li had irrelevant communications. As phrased, the request

22

requires Li to identify every person he ever had communications with at Tesla *during his employment* regardless of time period and relevance.

**Interrogatory No. 2** states:

Identify the Electronic Devices or other storage locations (e.g., network servers, cloud storage or email accounts) within Your possession, custody, or control that contain or at any time contained any Documents or Communications embodying, identifying, describing, relating to, or referring to Tesla or files originating from a Tesla network or to any Tesla Proprietary Information as described in Your Non-Disclosure Agreement with Tesla.

(Dkts. 15-3 and 15-4 at Rog. No. 2)

This interrogatory's reference to "Proprietary Information" is vague, ambiguous, and overbroad for the reasons noted above. Moreover, the request for "any Documents or Communications…relating to, or referring to Tesla" is vague and could encompass a vast array of irrelevant materials.

**Interrogatory No. 3** states:

Identify any Electronic Devices You used to access, transmit, download, store, copy, modify, or display any Tesla information or files originating from a Tesla network or any Tesla Proprietary Information as Described in Your Non-Disclosure Agreement with Tesla, including any Tesla Proprietary Information obtained from Tesla networks.

(Dkt. 15-3 at Rog. No. 3)

The reference to "Proprietary Information" is vague, ambiguous, and overbroad for the reasons noted above. Also, the request is vague as to what constitutes "any Tesla information" and is not limited in time, subject matter or scope. The request may require Defendants to identify devices used for any incidental or trivial purpose, regardless of relevance.

### 3. Depositions

Tesla also seeks the deposition of Li and a Proception corporate witness. Both deposition notices identify a topic of "Defendant's access, use, or disclosure of any of Tesla's Proprietary Information as described in [Li's] Non-Disclosure Agreement with Tesla." The topic is vague, ambiguous, and overbroad based on its use of the term "Proprietary Information" as explained above, as well as temporally overbroad. In addition, Tesla seeks depositions within only a week of responding to the expedited discovery requests, which is unreasonable and burdensome.

Taken singularly or as a whole, Tesla's demands for the expedited production of documents, interrogatory responses, and depositions go far beyond the scope of that to which a party is entitled at the preliminary injunction stage.

### B.    Tesla's Requests Are Not Proportional to the Needs of the Case

Discovery must be "proportional to the needs of the case," considering "the importance of the issues at stake," "the amount in controversy," "the parties' relative access to relevant information," "the parties' resources," "the importance of the discovery in resolving the issues," and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Tesla's requests fail this standard. The proposed forensic inspections, broad written discovery, and immediate depositions would impose significant costs and burdens on Defendants, who are a nascent company and an individual, respectively, while Tesla is a global corporation with vast resources. The burden and expense of the proposed discovery far outweigh any likely benefit, particularly given Tesla's refusal to identify the specific information at issue.

### C.    Tesla's Other Bases for Expedited Discovery Are Unavailing

Notwithstanding its alleged need to "ensure that the scope of any misappropriation is identified and cabined immediately," (Motion at 6), ensuring all purported harm is curtailed cannot justify expedited discovery that is not relevant to determining a preliminary injunction motion. *Profil Institut Fur Stoffwechselforschung Gbmh v. Profil Inst. For Clinical Research*, No. 16cv2762-LAB (BLM), 2016 U.S. Dist. LEXIS 175238, at *13 (S.D. Cal. Dec. 16, 2016). In *Profil*, the court denied a plaintiff's request for expedited discovery to ascertain the defendant's use of the plaintiff's trademark, identify other potential infringers, protect the plaintiff's brand, and otherwise mitigate its harm, because the stated purposes related to the merits of the case more broadly rather than being necessary for a preliminary injunction hearing. *Id.*, at *7–8, 12–13. Here, Tesla's purported use for their proposed expedited discovery is strikingly similar, i.e., to determine the scope of alleged misappropriation and mitigation of purported damages.

Tesla asserts it needs expedited discovery to prevent further harm and ensure that evidence is not destroyed. (Motion at 7.) This request is improper and unfounded. There is no evidence that Defendants have destroyed evidence, and they have repeatedly offered to cooperate with Tesla if it

24

DEFENDANTS PROCEPTION, INC. AND JAY LI'S OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY, Case No. 5:25-cv-04963-SVK

1 would identify the information at issue (Hui Decl. ¶¶ 5, 7–9.) Courts routinely reject such

2 speculative fears as good cause. *See, e.g.*, *Floyd v. 24 Hour Fitness USA, LLC*, No. 23-CV-00871-

3 EMC, 2024 U.S. Dist. LEXIS 29721, at *6–7 (N.D. Cal. Feb. 21, 2024) (fear of spoilation is not

4 good cause for expedited discovery); *Rovio Ent. Ltd.,* 907 F. Supp. 2d at 1100 (denying expedited

5 discovery because "Plaintiff has not established that Defendants are predisposed to destroy or hide

6 evidence."); *Hopscotch Adoptions, Inc.*, 2009 U.S. Dist. LEXIS 121763, at *6-7 (unsupported fear

7 of spoliation cannot support expedited discovery).

8          The risk of spoilation is also curtailed by the parties' ongoing duty to preserve evidence.

9 *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 328 F.R.D. 543, 549 (N.D. Cal. 2018) ("As soon

10 as a potential claim is identified, a litigant is under a duty to preserve", backed with the Court's

11 power to impose sanctions for the destruction of evidence, is sufficient to secure the preservation

12 of relevant evidence.). Defendants confirmed to Tesla they were preserving documents, and

13 proposed a mutual stipulated preservation order. Venkatesan Decl. ¶21, Exh. 18. Such a

14 representation precludes expedited discovery. *Monterey Bay Military Hous., LLC v. Ambac Assur.*

15 *Corp.,* No. 17-cv-04992, 2017 U.S. Dist. LEXIS 238978*,* at *5 (N.D. Cal. September 22, 2017)

16 (counsel's written assurance of preservation precludes preservation order and expedited

17 discovery). To date, Tesla has not agreed, or even responded, to Defendants' proposal. Venkatesan

18 Decl. ¶21.

19 **VI.    CONCLUSION**

20          Tesla's Motion for Expedited Discovery is based on misstatements of its evidence and is

21 undermined by its delay in seeking relief. The discovery it seeks does not satisfy Federl Rule of

22 Civil Procedure 26 or the gating requirements of section 2019.210. Defendants therefore

23 respectfully request that the Court deny Tesla's Motion for Expedited Discovery.

24 Dated:  June 30, 2025                     BERGESON LLP

25                                          By:    /s/  Jaideep Venkatesan

26                                                 Jaideep Venkatesan

27                                          Attorneys for Defendants
                                            PROCEPTION, INC. and
28                                          ZHONGJIE "JAY" LI

25

DEFENDANTS PROCEPTION, INC. AND JAY LI'S OPPOSITION TO PLAINTIFF'S MOTION FOR
EXPEDITED DISCOVERY, Case No. 5:25-cv-04963-SVK